JOSEPH LOMBARDO *vs.* DOMENIC DISANDRO *et al.*

*as the* RACING AND ATHLETICS HEARING BOARD.

MARCH 23, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This petition for certiorari was brought to quash as illegal the record and action of the racing and athletics hearing board on petitioner's appeal from a decision of the state commission on horse racing and athletics. Hereinafter the former will be referred to as the board and

the latter as the commission. The question at issue concerns the revocation by the board of petitioner's license to participate in racing activities in Rhode Island as an owner of horses. The writ was issued and pursuant thereto the pertinent records were certified to this court.

It is generally recognized that horse racing for stakes or reward, although permitted by law, is of such a nature as to demand in the public interest strict control by rules and regulations allowing the governmental agencies charged with their enforcement reasonably wide discretion in protection of the common welfare. In this state horse racing is governed by general laws 1938, chapter 12, as amended. It is thereby provided in §10 that no person shall engage in such activity without first having obtained a license, application for which shall be made on a printed form furnished by the commission. Section 11 provides that any license granted under the provisions of chap. 12 shall be subject to the rules and regulations of the commission and may be suspended or revoked for any cause which it deems sufficient. Rule 326-D of the rules of horse racing authorizes the revocation of a license if a licensee's conduct in connection with horse racing is objectionable, obnoxious or detrimental to the best interest of racing. The legality of the foregoing provisions of the statute and of the said rule is not challenged.

Acting under the powers thus conferred, the commission notified petitioner to appear at a specified time and place to show cause why his owner's license should not be revoked for the reason that he had *"withheld* from this Commission certain facts relative to your arrest and conviction of certain violations of the law." (italics ours) No request was made by him at any time for a more particular statement of the charge that he was called upon to answer. On the day of the hearing instead of appearing as requested he sent a registered letter to the commission asking that his license be canceled for the reasons therein stated. After

considering and denying such request, the commission ordered that his 1952 owner's license and the registration of the assumed name "Pine Tree Farm" be revoked "for falsification of application" and further that he be denied "the privileges of the grounds."

The application referred to by the commission in its decision consisted of a printed form with questions to be answered by an applicant before an owner's license would be issued. Among those questions was the following: "11. Have You Ever Been Arrested or Charged with a Crime (Except Traffic Violations) Give Place, Date, Crime Charged and Disposition," with one line for the insertion of whatever information might be necessary. The petitioner's answer to the first part of the question was "Yes," and to the latter part he stated in substance that in 1930, upon investigation of a certain offense with which he was charged, a grand jury in Boston, Massachusetts, found no bill. The falsification upon which the commission based its decision for revocation of petitioner's license was his failure to disclose, in the second part of his answer to question 11, certain arrests or convictions for crimes which, as will presently appear, occurred about twenty-five years prior to the date of the application in question here.

From the decision of the commission petitioner duly appealed to the board which, in compliance with public laws 1939, chap. 660, secs. 125, 127, as amended by P. L. 1940, chap. 821, thereafter heard the matter *de novo*. The sole question there at issue, as previously, was whether in answering question 11 of the application petitioner had "withheld" information from the commission in failing to disclose fully his previous arrests or convictions on criminal charges.

At the hearing before the board the evidence on both sides was undisputed. The commission plainly established by competent proof that in 1925 and 1927 petitioner had been arrested and in some instances convicted of crime and

that he had failed to mention those occurrences in his application for a license.

The petitioner's explanation of such omissions was that, considering the remoteness of the omitted offenses and the limited space allowed for an answer to the second part of question 11, he misunderstood the all-embracing scope of the inquiry thereby intended and honestly believed that admission of and reference to the latest accusation of crime were sufficient to meet the requirement of that question; and that at no time did he intend to mislead the commission, as was evident from his affirmative statement that he had been accused of a certain crime and exonerated by a grand jury in 1930.

The uncontradicted evidence in petitioner's behalf further showed that he had been breeding and racing horses for about thirteen years; that he had been granted licenses in Rhode Island and elsewhere since 1941; that in this state his applications for the years 1946 to 1951, both inclusive, were substantially the same as the one under consideration; that at no time had he been called for investigation by any racing commission or board; and that he was one of the founders of the Horsemen's Benevolent and Protective Association, a national organization with a membership of about 14,000 trainers and owners in the United States and of some 1,300 or 1,400 members in New England. A letter in evidence from that association, signed by its vice-president, stated that petitioner was "well known by all as honest, competent and sincerely truthful," and that he had consistently been a real force for "decency in racing."

After reviewing the evidence at considerable length, the board began its decision with a criticism of question 11 saying that it "could be a lot simpler, and perhaps should have asked the question whether applicant had ever been convicted of a crime within a specific period, say ten years, rather than had he ever been arrested or charged with a crime * * *." But "while the appellant [petitioner here]

may have been misled by the wording of the question, with only one line for the answer," he should at least have disclosed his prior convictions rather than merely referring to a charge of crime which a grand jury had resolved in his favor.

Immediately thereafter the board expressed itself in the following language: "We do not go so far as to say that he falsified his application, as we are of the opinion that if he intended to falsify the application his answer to the first part of Question No. 11 would not have been 'Yes' but would have been 'No', as with a 'Yes' answer the Commission might have checked the record in Massachusetts and discovered the facts." Notwithstanding such exoneration of any willful falsification on the part of petitioner, the board, after overruling in no uncertain terms the commission's order that he be excluded as one of the public from race tracks in this state, ordered that his license "be revoked for failure to file a complete answer to Question No. 11 as to criminal convictions * * *."

It is well settled that in certiorari this court does not pass upon the weight of the evidence, but examines it merely to determine whether the challenged decision of an inferior court or tribunal exercising judicial or quasi-judicial functions was within its lawful powers and based on legal evidence. Unless it clearly appears that in the circumstances of record the decision was arbitrary or unreasonable it will not be disturbed. *Parenti* v. *Parenti*, 71 R. I. 18; *Lapre* v. *Kane*, 69 R. I. 504; *Hanna* v. *Board of Aldermen*, 54 R. I. 392.

We have referred to the facts in this case to show that, whatever we might think of the weight of the evidence or the extent of the punishment imposed, there was legal evidence to support the decision of the board. Considering that the offenses which petitioner failed to mention in the application in question here had occurred some twenty-five years prior to the date thereof, the commission or the board

might well have decided that the effect of those transgressions had been erased by his subsequent commendable behavior. Indeed the board seems to have indicated as much in pointing out the uncontradicted evidence of his consistent good conduct and contribution to racing in more recent years and by finding that he had not intentionally "falsified his application." Nevertheless, the board was confronted with the admitted fact that he had not fully answered question 11 of the application and that thereby he had "withheld," even though unintentionally, material information for the commission to consider in determining whether it should grant him a license.

As previously stated, the narrow question presently before us on certiorari is to ascertain whether there was legal evidence to support the decision in question. In the circumstances of record we cannot say that there was no such evidence. We are therefore constrained to affirm the decision of the board.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified to this court are ordered to be returned to the respondent board with our decision endorsed thereon.

*Francis Castrovillari, Paul T. Smith* and *Reuben Goodman,* of Massachusetts Bar, for petitioner.

*William E. Powers,* Atty. Gen., *Francis J. Fazzano,* Ass't Atty. Gen.; for respondent board.